**SCOTT K. SEELAGY, ESQ.**
Attorney at Law
95 Spring Brook Road
Morristown, NJ 07960
Tel: (973) 726-0059
e-mail: sseelagy@seelagylaw.com
Attorney(s) for Plaintiff Jayme L. Jefferson
NJ Atty. ID Number: 025101986

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAYME L. JEFFERSON,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF CHESILHURST, BOROUGH OF CHESILHURST POLICE DEPARTMENT, TYQUAN D. MCINTOSH, individually and in his official capacity, and JOHN DOES (1-10), said name JOHN DOES (1-10) being fictitious, individually and in his/her official capacity,<br><br>Defendants. | CIVIL CASE NO.:  1:21-cv-12456<br><br><br><br>**COMPLAINT AND JURY DEMAND**<br><br><br><br>Jury Trial Demanded<br><br><br><br><u>Filed via ECF</u> |

Plaintiff JAYME L. JEFFERSON, residing in Mt. Holly, County of Burlington and State of New Jersey, by way of Complaint against the defendants BOROUGH OF CHESILHURST, BOROUGH OF CHESILHURST POLICE DEPARTMENT, TYQUAN D. MCINTOSH, individually and in his official capacity, and JOHN DOES (1-10), said name JOHN DOES (1-10) being fictitious, individually and in his/her official capacity, says:

<u>**NATURE OF THE ACTION**</u>

1.      This is an action brought by the plaintiff JAYME L. JEFFERSON, a resident of Mount Holly, County of Burlington, in the State of New Jersey and within this District, for compensatory, consequential and punitive damages and attorney's fees and costs of suit, for

violations of plaintiff's civil rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and for violations of plaintiff's civil rights under the Constitution of the State of New Jersey and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq., for false arrest, false imprisonment, excessive use of force, abuse of process and deprivation of due process, a violation of plaintiff's free-speech rights, unlawful search and seizure; and, for defendants' creation, adoption and implementation of policies that were discriminatory and/or violated the civil rights of citizens, including the plaintiff, *or* the failure of defendants to create, adopt and implement policies to prevent their employees from engaging in conduct that was unlawful and violated the constitutional rights of citizens, including the plaintiff, as set forth hereinafter.

## JURISDICTION

2.     This action arises under the Constitution of the United States, and more specifically under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, and under the laws of the United States, and more specifically the Civil Rights Act, 42 U.S.C. §1983, 42 U.S.C. §1985, and 42 U.S.C. §1988, and accordingly, the Court has original jurisdiction.

3.     The original and supplemental jurisdiction of this Court is also invoked pursuant to the provisions of 28 U.S.C. §1331, §1343 and §1367.

## VENUE

4.     Venue is properly laid in the District of New Jersey under 28 U.S.C. §1391(b)(1) and (2), in that this is the District in which one or more of the defendants reside and where the events, acts and/or omissions giving rise to this claim occurred.

**THE PARTIES**

5.      Plaintiff JAYME L. JEFFERSON was at all relevant times a United States citizen and a resident of the Borough of Chesilhurst, in Camden County, New Jersey.

6.      Defendant BOROUGH OF CHESILHURST (hereinafter "defendant BOROUGH"), having its principal place of business located at 201 Grant Avenue, in Chesilhurst, Camden County, New Jersey, was and is a municipal corporation or municipal entity duly organized, existing and operating under and by virtue of the laws of the State of New Jersey.

7.      Defendant BOROUGH OF CHESILHURST maintains the defendant BOROUGH OF CHESILHURST POLICE DEPARTMENT (hereinafter "defendant CHESILHURST PD"), as the principal law enforcement agency, entity, department and/or division of the defendant BOROUGH, which is a duly authorized public authority and/or Police Department authorized to perform all functions of a Police Department as per the applicable sections of the New Jersey Criminal Procedure Laws, and acting under the direction and supervision of the defendant BOROUGH.

8.      Defendant CHESILHURST PD is located at 201 Grant Avenue, in Chesilhurst, Camden County, New Jersey.

9.      Defendant TYQUAN D. MACINTOSH (hereinafter "defendant MACINTOSH") was at all times relevant hereto the agent, servant and/or employee of the defendants BOROUGH OF CHESILHURST and/or the CHESILHURST PD, who served as a duly sworn Police Officer and/or patrolman of the defendant BOROUGH and/or the CHESILHURST PD.

10.     At all times relevant hereto, defendant MACINTOSH acted under the supervision of the defendants BOROUGH and/or CHESILHURST PD, and in accordance with said defendants' official customs, practices, policies, procedures and rules.

11.    At all times relevant hereto, defendant MACINTOSH acted under the color of state law and in his official capacity as a duly sworn Police Officer within the scope of his employment, and in furtherance of his employment by the defendants BOROUGH and/or CHESILHURST PD.

12.    Defendant JOHN DOES (1-10), said name JOHN DOES (1-10) being fictitious (hereinafter "JOHN DOES"), are fictitious persons or entities whose name(s) or identity(ies) cannot be ascertained at the present time and who acted as the agents, servants and/or employees of the defendants BOROUGH OF CHESILHURST and/or CHESILHURST PD, as duly sworn police officers or law enforcement officers having high-level responsibility and final supervisory and decision-making authority: 1) over the operations and internal affairs of the defendant CHESILHURST PD, including the hiring, training, education and supervision of its police officers, including the defendant MACINTOSH; 2) the adoption, creation, implementation of all customs, practices policies, procedures and rules employed by the defendants BOROUGH and the CHESILHURST PD, as they pertain to the conduct of its police officers, or 3) or as duly sworn police officers employed by defendants BOROUGH and/or CHESILHURST PD, who conspired with defendant MACINTOSH to violate civil rights of the plaintiff under both federal and state law, as stated hereinafter.

13.    At all times relevant hereto, all of the defendants, either personally or through their employees, were acting under the color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New Jersey, the defendants BOROUGH and/or the CHESILHURST PD.

## **STATEMENT OF FACTS**

14.    On or about June 14, 2019, at approximately 4:00 PM, the plaintiff JAYME L. JEFFERSON (hereinafter "JAYME" or "plaintiff"), drove her 1998 Infinity motor vehicle into

a gas station located at the corner of White Horse Pike (Route 30) and Garfield Avenue, in the Borough of Chesilhurst, County of Camden and State of New Jersey, and parked in a parking space near the store located within the gas station.

15.     Plaintiff is an adult female standing approximately 5 feet tall and weighing approximately 100 pounds, who had previously suffered from an injury to her lumbar spine that required extensive surgery, resulting in a permanent disability.

16.     At the time and place aforesaid, plaintiff's boyfriend Marc Scanlan (hereinafter "Scanlan"), was a front seat passenger, and plaintiff's daughter, who was eight (8) years old, was a backseat passenger in the vehicle.

17.     After plaintiff parked her vehicle in the gas station, Scanlan went into the store to purchase some items.

18.     At that time, plaintiff noticed a black Chesilhurst Police Department vehicle slowly pull up and park behind her vehicle, in a position which was perpendicular to the plaintiff's vehicle.

19.     Plaintiff continued to talk and laugh with her daughter, while they waited for Scanlan to come out of the store.

20.     After Scanlan came out of the store, he entered plaintiff's vehicle and sat in the front right passenger seat.

21.     Plaintiff pulled her vehicle from the parking space and through the parking lot, and then safely made a right turn onto White Horse Pike in a northerly direction.

22.     Plaintiff drove a short distance in the right lane on White Horse Pike at approximately 25-30 mph, when she heard a noise coming from one of her tires, and the tire felt wobbly to her.

23.     No other cars were near plaintiff's vehicle, either to her left side or in front or in back of her as she was traveling in the right lane on White Horse Pike in a northbound direction.

24.     Plaintiff activated her right turn signal, and after observing that it was safe to do so, she moved her vehicle to the right across the small shoulder of the roadway which measured only about 3-4 feet in width, and onto a dirt and gravel area completely off of the roadway to check her tire.

25.     Plaintiff stopped her vehicle completely off of the roadway in a safe location away from all and onto a dirt and gravel area to check her tire.

26.     At all times, plaintiff operated her vehicle in a careful, prudent and reasonable manner, and obeyed all traffic laws before coming to a stop off of the roadway in order to check her tire.

27.     Plaintiff exited her vehicle and checked her tire, which appeared to be fine.

28.     As the plaintiff had walked back to the driver's side door of her vehicle, she observed a black Chesilhurst Police Department vehicle pull up behind her vehicle with its overhead lights flashing.

29.     The black Chesilhurst Police Department vehicle appeared to the plaintiff to be the same vehicle which she observed only moments earlier in the gas station, which had pulled up and stopped behind her.

30.     The defendant MACINTOSH was the operator and sole occupant of the black Chesilhurst Police Department vehicle that pulled up and parked behind plaintiff's vehicle off of the roadway with his vehicle's overhead lights flashing.

31.     Defendant MCINTOSH is a police officer standing over 6 feet tall and is believed to weigh in excess of 215 lbs.

32.     Defendant MACINTOSH had followed the plaintiff out of the gas station parking and onto White Horse Pike in a northerly direction, until he pulled up behind her and parked his police vehicle approximately 15-20 feet behind plaintiff's vehicle on the dirt and gravel area off of the roadway.

33.     Plaintiff had already pulled her vehicle off of the roadway for purposes of checking her tire, and not because defendant MACINTOSH had activated his overhead lights to pull her over.

34.     Before defendant MACINTOSH had even pulled his police vehicle behind plaintiff's vehicle, plaintiff had already checked her tire and was returning to the driver's side door to enter the vehicle and drive away.

35.     Defendant MACINTOSH then exited his police vehicle and walked straight over to the plaintiff.

36.     Defendant MACINTOSH was wearing a "body worn camera" (hereinafter "BWC"), which he activated as he reached the driver's side of the plaintiff's vehicle.

37.     Defendant MACINTOSH activated both the audio and video on his BWC as he approached the plaintiff.

38.     Defendant MACINTOSH walked to a distance of only a few feet from the plaintiff, as she was standing outside of her vehicle next to her driver's side door.

39.     Plaintiff began to explain to defendant MACINTOSH that she pulled off of the roadway to check her tire which seemed wobbly to her.

40.     Defendant MACINTOSH interrupted the plaintiff and commented that she did not stay on the road, and that she pulled out of the gas station parking lot and drove her vehicle over the line denoting the shoulder, while the plaintiff attempted to explain to him why she had moved her vehicle to the right, across the shoulder and off of the roadway.

41.     As plaintiff continued to speak to defendant MACINTOSH, he again interrupted her and stated to her that after she had pulled out of the gas station parking lot, she moved "over to the curb", notwithstanding that no curb existed on the roadway in that area.

42.     Defendant MACINTOSH changed his initial statement that he pulled up behind the plaintiff's vehicle with his lights flashing from: 1) plaintiff having driven her vehicle over the

line denoting the shoulder, to 2) defendant having observed the plaintiff move over to the curb, which did not exist on that portion of the roadway.

43.     Plaintiff continued to explain to defendant MACINTOSH that she pulled off of the roadway to check her tire because the tire felt wobbly to her.

44.     As plaintiff was speaking to defendant MACINTOSH outside of her driver's side door, Scanlan handed plaintiff her driving credentials, including her license, registration and insurance card.

45.      Defendant MACINTOSH then commented that he did not stop plaintiff because of her speed, and that plaintiff should calm down and stop acting like she was "running the show".

46.     Plaintiff responded that she was not "running the show", and she continued to try to speak with defendant.

47.     Defendant MACINTOSH then told plaintiff to "get back in the car", despite the fact that plaintiff had remained calm, but continued to try to explain to the defendant that she pulled off of the road to simply check her tire.

48.     Plaintiff again asked defendant MACINTOSH why he had stopped her, to which he stated to her, "I just told you, failure to maintain your lane" and that she failed to "maintain the shoulder lane."

49.     Plaintiff responded to defendant MACINTOSH that she did not fail to maintain her lane, and that he was "full of it", which caused defendant MACINTOSH to become belligerent and angry, when he responded with a raised voice, "I am full of it, give me the stuff", and "let me tell you something, how about you get back in the car right now before I put you in hand cuffs in front of your family."

50.     Plaintiff responded to defendant MACINTOSH'S statement about putting her in handcuffs by commenting, "in front of my family? For doing nothing?"

51.   Defendant MACINTOSH then instructed the plaintiff to "get in the car", and he then again instructed her, "you can get in the car and give me your documents."

52.   Plaintiff complied with defendant MACINTOSH'S instructions by opening her driver's side car door and entering her vehicle.

53.   As plaintiff was entering her car, defendant MACINTOSH continued stating, "you can get in the car and give me your documents", in an agitated and belligerent manner.

54.   As of the plaintiff began to sit in her seat, defendant MACINTOSH proceeded to close plaintiff's driver's side door on the plaintiff's sneaker, preventing the door from initially closing.

55.   Plaintiff responded to defendant MACINTOSH'S act of closing the door on her sneaker, "I'll shut my door thank you," to which defendant responded, "I shut your door."

56.   Defendant MACINTOSH then stated, "Shut the door and don't open it again" in a direct and belligerent manner.

57.   Plaintiff responded, "I did and I was shutting it the rest of the way," in a firm but calm tone.

58.   Immediately and as a result of the plaintiff's comment about shutting her own door, defendant MACINTOSH suddenly and without warning lost control of himself and become enraged, and he suddenly pulled open the plaintiff's door as he began yelling at the plaintiff in a fast cadence which grew louder and louder, "Step, you can get back out, ok, get out of the car, get out, get out of the car, get out of the car…."

59.   As defendant MACINTOSH pulled plaintiff's door open, he continued to yell at her with a raised voice for her to get out of the car, when she initially responded to him by stating that she wanted him to get another officer.

60.     Plaintiff stated to defendant MACINTOSH that she wanted him to get another officer because she was afraid and upset at defendant's threats of being handcuffed for no reason after just being instructed to get back in her car, his agitated and increasingly belligerent manner, his sudden and unexpected act of pulling open the door, and his continued yelling at her to now get back out of the car for no legitimate reason other than her comment to him about closing her door the rest of the way.

61.     Defendant MACINTOSH ignored and outright refused plaintiff's request to have another officer come to the scene.

62.     Instead, as defendant MACINTOSH continued yelling at the plaintiff as he pulled open her car door without warning, he used his left hand to forcibly grabbed plaintiff's left arm to place a handcuff above her left wrist while still yelling at her to get out of the car, over her requests for another officer to come to the scene to handle the situation.

63.     Only a couple of seconds transpired from the moment plaintiff made her comment about shutting her door "the rest of the way", to the time when defendant MACINTOSH pulled plaintiff's door open and forcibly grabbed her left arm to handcuff her, simply because she made a comment about closing her door, and nothing more.

64.     From the moment that defendant MACINTOSH instructed plaintiff to get back in her car to the moment when he placed a handcuff on her arm above the left wrist as she sat in the driver's seat of her car, defendant MACINTOSH never advised the plaintiff why he was handcuffing her and placing her under arrest.

65.     When the plaintiff had tried to ask defendant MACINTOSH to get another officer because she was in fear of him, he ignored her request for another officer as he grabbed her left arm and handcuffed her, and then forcibly pulled and dragged her out of her seat and threw her to the ground, causing her to strike her head, back and side on the dirt, gravel and stone.

66.     Defendant MACINTOSH never advised the plaintiff why he was yelling at her to get out of the car or why he was now arresting her, just after he just instructed her to get into the car and to stay in the car, and he never gave her any warning that she would be arrested at any point after she sat on her seat, and prior to the defendant opening plaintiff's car door, handcuffing her left wrist and forcibly removing her from the vehicle and throwing her to the ground.

67.     From the moment when plaintiff got into her car in compliance with defendant MACINTOSH'S instructions to the moment when defendant handcuffed her left wrist to arrest her, she engaged in no act or conduct that amounted to a failure to obey instructions, conduct amounting to a crime or a disorderly-persons offense or any other criminal or quasi-criminal offense that established sufficient probable cause for an arrest.

68.     Plaintiff engaged in no conduct the raise a safety concern for defendant MACINTOSH at any time from the point when he instructed her to get back into her vehicle, until the time that he pulled her door open and forcibly handcuffed her left wrist and dragged her out of the car and threw her to the ground.

69.     At no time after the plaintiff requested that defendant MACINTOSH get another officer because of her fear of defendant, did the defendant provide her with any additional instruction or comment either warning or advising her that if she did not get back out of the vehicle, he would physically remove her from the vehicle or arrest her.

70.     At approximately the time that defendant MACINTOSH had forcibly pulled and dragged plaintiff from receipt her seat and threw her onto the ground, Scanlan exited the passenger side of the plaintiff's vehicle and came around the back to observe what was happening.

71.     Plaintiff was terrified of the defendant and began screaming hysterically because defendant MACINTOSH was attacking her for no reason whatsoever, and he utilized sudden,

unexpected, extreme and unnecessary force under the circumstances to remove plaintiff from her vehicle and throw her to the ground, as he continued to yell at her in a loud, belligerent and threatening tone.

72.     As defendant MACINTOSH used excessive and unnecessary force to drag plaintiff from her vehicle and throw her onto the ground, plaintiff was hysterical and screaming in disbelief at what was happening while the defendant was attacking her for no lawful reason; and, she repeatedly asked the defendant "what the "f---" are you doing?

73.     Plaintiff repeatedly pled with defendant to get off of her and stop attacking her because he was hurting her.

74.     Defendant MACINTOSH ignored plaintiff's pleas to stop attacking her, and he continued to physically accost her by using excessive and unnecessary force that involved throwing her around from side to side, using his hands to hit and push her around on the ground, jamming his knee into her back and shoulder, and by using the weight of his body to crush her into the ground, all of which caused her to suffer injury to her back, shoulders, legs, arms, hips, buttocks and vaginally area, as well as significant cuts and bruising about her body.

75.     While defendant MACINTOSH had forcibly kept plaintiff down on the ground, he positioned his body so that he was laying on top of her with the full force of his weight crushing down on her as she continued to scream at him to stop hurting her.

76.     While defendant MACINTOSH was pressing his full weight onto the plaintiff and crushing her into the ground, he continued screaming at her to "turn around right now or I'll tase you, to which the plaintiff responded, "you're going to tase me?".

77.     Scanlan, who was now standing at the rear of plaintiff's vehicle, observed these events and asked the officer why he was doing this to the plaintiff.

78.     Defendant MACINTOSH told Scanlan repeatedly to "go get in the car", "go get in the car right now", "go get in the car, go get in the car, go get in the fucking car, go get in the fucking car right now".  Scanlan complied and returned to the car.

79.     At approximately that time, plaintiff was pleading with defendant MACINTOSH to get off her and that she had a bad back.

80.     Plaintiff repeatedly told defendant MACINTOSH that she could not move her arms because he was on them, as he continued to sit and/or lay on her back using his weight to crush her body and prevent her from moving either her body or her arms.

81.     Defendant MACINTOSH ignored plaintiff's statement about having a bad back, and he continued yelling at her to put her hands behind her back, and to "give me your hand", to which the plaintiff responded "you got it", and "you got it . . . ."

82.     Despite the plaintiff advising defendant MACINTOSH that she had a bad back, that defendant was hurting her, and that plaintiff could not move her arm behind her under circumstances where defendant was already grabbing her right arm, he continued to yell at her to "put your hand behind your back" and to put "your fucking hand behind your back".

83.     Plaintiff continued to scream for help as she was in obvious pain and discomfort as a direct result of defendant's forcible aggression, grabbing, touching and manipulation of the plaintiff as she lay on the dirt, stone and gravel ground with almost the full force of the defendant's body pressing her downward, constricting virtually all of her ability to move.

84.     Plaintiff even advised defendant MACINTOSH that if he continued to pull on her arm in the manner he was doing so, he was going to break her arm, but defendant MACINTOSH continued to ignore her and to yell at her to give him her right hand.

85.     Plaintiff implored defendant MACINTOSH to let go of her so she could give him her hand, which he again ignored, as he continued to scream at her to "give me your arm", despite

the fact that defendant was using force against her that prevented her from giving him her arm, as he continued to hurt her as she was lying face down on the ground.

86.     As defendant MACINTOSH was sitting on her and screaming at the plaintiff to give him her arm, Scanlan, who was concerned for plaintiff, came back around the rear of the car to again observe what was happening.

87.     As Scanlan stood at the rear of the car, plaintiff stated to Scanlan that defendant MACINTOSH was on her back and that he was hurting her, which statement was sufficiently loud enough for the defendant to hear.

88.     Scanlan was unarmed and made no aggressive gestures of any kind, and simply stood at the back of the car and advised defendant that plaintiff had a bad back, and he pleaded with the defendant to be gentler with the plaintiff.

89.     Defendant MACINTOSH again screamed at Scanlan and told him to get in the car repeatedly, as he had now pointed his Taser at Scanlan, threatening him that he would shoot him if he did not get back in the car.

90.     Defendant MACINTOSH continued to point his Taser at Scanlan and at the face of the plaintiff's daughter who was watching what was happening to her mother from the rear driver's side window.

91.     Defendant MACINTOSH continued to point his Taser at plaintiff's daughter face, which was in the line of sight of the area where Scanlan had gone back around the car to sit in the passenger's seat, threatening to shoot Scanlan and plaintiff's daughter with the Taser gun.

92.     As defendant MACINTOSH was finishing pointing the Taser gun at Scanlan and plaintiff's daughter, additional police officers from the Chesilhurst Police Department had arrived at the scene, with one vehicle parking in the right travel lane of the roadway and another vehicle pulling up and parking behind defendant MACINTOSH'S vehicle.

93.     Lieutenant Jeffrey J. Gauntt (hereinafter "Lt. Gauntt), an employee of the defendants BOROUGH OF CHESILHURST and/or CHESILHURST PD arrived at the scene in his own vehicle and parked off of the roadway near defendant MACINTOSH'S vehicle.

94.     A second officer, Chesilhurst Police Officer Mims (hereinafter "Patrolman Mims"), also an employee of the defendants BOROUGH OF CHESILHURST and/or CHESILHURST PD, arrived at the scene and parked his vehicle in the right travel lane of the roadway to the left of, and slightly behind plaintiff's vehicle, which remained off of the roadway.

95.     Just prior to or as Lt. Gauntt and Patrolman Mims arrived, defendant MACINTOSH had fully handcuffed the plaintiff while she was on the ground.

96.     After Scanlan returned to the passenger seat and those additional officers had arrived at the scene, defendant MACINTOSH grabbed plaintiff's left arm and pulled her up to stand on her feet.

97.     Defendant MACINTOSH walked plaintiff back to his patrol car, while forcibly grabbing and holding onto the area of her left arm between the shoulder and the forearm, with both of his hands pressing down tightly on her skin.

98.     As defendant MACINTOSH was placing plaintiff in the patrol car, plaintiff repeatedly stated to him that she did not deserve this and that she had done nothing wrong.

99.     Defendant MACINTOSH said nothing and closed the door to the patrol car.

100.    Defendant MACINTOSH proceeded to walk over to Scanlan, who was sitting in the passenger seat of plaintiff's vehicle, to ask him for his identification, to which Scanlan responded that he did not have a driver's license on him.

101.    While remaining seated in the rear of defendant MACINTOSH'S vehicle, plaintiff observed defendant MACINTOSH walk over to Scanlan and stand on the outside of the passenger door of her vehicle.

102.    Plaintiff further observed Lt. Gauntt and Patrolman Mims walk to an area slightly behind and to the left of where defendant MACINTOSH stood.

103.    Defendant MACINTOSH advised Scanlan that someone would need to drive plaintiff's vehicle away because she "was going to jail."

104.    Defendant MACINTOSH requested that Scanlan produce identification.

105.    Scanlan advised defendant MACINTOSH that the girl in the rear seat was plaintiff's daughter, and he again advised defendant that the plaintiff had a spinal injury, specifically a spinal leak, and very bad back problems, to which defendant responded, "Give me your ID, I'm not worried about that right now".

106.    Scanlan continued to advise defendant MACINTOSH that the plaintiff had a bad back, which defendant MACINTOSH continued to ignore, and instead repeatedly asked for identification, which Scanlan provided to him.

107.    As defendant MACINTOSH was speaking with Scanlan, defendant swung his BWC to his left away from Scanlan and toward the other officers who were standing behind and to the left side of defendant.

108.    Plaintiff observed defendant MACINTOSH place his hand over a portion of his BWC as he turned to his left toward Patrolman Mims, who was standing to the left and slightly behind where defendant MACINTOSH stood at the passenger-side door on plaintiff's vehicle.

109.    At that point, one or both of the other officers Lieutenant Gauntt and/or Patrolman Mims, made comments to defendant MACINTOSH about asking Scanlan something.

110.    Just after the other officers Lt. Gauntt and/or Patrolman Mims made those comments to defendant MACINTOSH, the video and audio on defendant's BWC goes off (at 4:28 minutes into the recording) and appears to stop recording while the officers engage in conversation.

111.   At that time, BWC video switches from defendant's BWC to the BWC of Patrolman Mims, with the audio aspect silent, and shows defendant MACINTOSH standing at plaintiff's passenger side door.

112.   Patrolman Mims' BWC records video of the scene while the audio remains silent.

113.   As defendant MACINTOSH was engaging in conversation with the other officers, Patrolman Mims' BWC shows his fingers partially obstructing the view from his video camera pointing toward defendant MACINTOSH, appearing as if he had been signaling defendant to turn off the audio portion and/or video portion of his BWC.

114.   Almost immediately, Officer Mims' BWC swings toward Lt. Gauntt, who is seen making repeated up and down motions with his right hand on his lower chest and abdominal area where a BWC would typically be worn by an officer, as if to gesture or signal to defendant MACINTOSH to turn off the audio and/or video on defendant's BWC.

115.   Plaintiff observed Lt. Gauntt making the up-and-down motion with his right hand over his lower chest and abdominal area, which appeared to be a signal to the other officers to manipulate their BWC with regard to the audio and/or video aspects of that equipment.

116.   The audio portion on defendant MACINTOSH'S BWC remained completely silent as he observed on the video portion of Patrolman Mims' BWC as having walked around the front of the plaintiff's car after completing his discussion with Scanlan.

117.   Defendant MACINTOSH meets up with Patrolman Mims at the rear driver's side of plaintiff's vehicle and words are exchanged without being heard because the audio portion of their respective BWC's were turned off.

118.   After speaking with Patrolman Mims, the video portion of Patrolman Mims' BWC shows defendant MACINTOSH walking back to his patrol vehicle, at which time BWC video

footage changes back to defendant MACINTOSH'S BWC (at approximately 6:00 minutes into the BWC footage), as he is walking back to and getting into his patrol car in the driver's seat.

119.   After getting into his vehicle, defendant MACINTOSH ran the plaintiff's driving credentials through his onboard computer.

120.   Defendant MACINTOSH turned the audio portion of his body cam on (at 7:00 minutes into the video footage), when he is seated in his patrol car and is no longer speaking with the other officers.

121.   While plaintiff sat in the rear of defendant MACINTOSH'S police vehicle, plaintiff repeatedly stated to him that she did nothing wrong and that she was simply checking her tire.

122.   Defendant MACINTOSH ignored her and asked plaintiff if she had someone who could pick her daughter up, to which she said "yes".

123.   Defendant and exited his vehicle and walked to the plaintiff's vehicle and opened her door, then directed Scanlan to give him plaintiff's phone from her purse. Scanlan complied.

124.   Defendant MACINTOSH obtained plaintiff's phone without plaintiff's authorization and consent, and returned to his vehicle.

125.   Defendant MACINTOSH repeatedly attempted to access plaintiff's phone without her consent, and refused to permit her to use her phone to call somebody to pick up her daughter.

126.   Defendant MACINTOSH then asked the plaintiff how to use her phone, to which she responded that she could contact somebody for her daughter if he would remove the handcuffs. Defendant refused to remove the handcuffs and then threatened plaintiff that if he could not figure out how to use her phone then plaintiff's daughter would be taken to Police Headquarters.

127.   Defendant MACINTOSH stepped out of his vehicle and attempted to access plaintiff's phone without her consent, but was not successful despite his repeated attempts to do so.

128.    Defendant MACINTOSH refused to permit the plaintiff to utilize her phone to contact somebody to pick up her daughter from the scene.

129.    Defendant MACINTOSH then walked from his vehicle over toward Patrolman Mims and to tell him that he had to call someone to pick up plaintiff's daughter, to which Patrolman Mims responded to defendant, "they all live in town, so".

130.    Defendant MACINTOSH asked, "what town"?

131.    Officer Mims responded, "our town, know em", and "that wasn't the point I was making."

132.    Immediately after Patrolman Mims made his comments to defendant MACINTOSH, defendant covered a portion of his video camera on his BWC, and the audio portion of his BWC again goes silent (at 9:42 minutes on defendant's BWC footage), to prevent the recording of any further discussion with Officer Mims about the plaintiff's family or the incident.

133.    Defendant MACINTOSH and Lt. Gauntt and Patrolman Mims continue their discussions at the scene which cannot be heard because the audio aspect of the officers' BWC's appeared to be turned off.

134.    Defendant MACINTOSH turns on the audio on his BWC (15:05 minutes into defendant's BWC video footage) as he and the other officers walked over to Scanlan and ask him to get out of the vehicle.

135.    Patrolman Mims advised Scanlan in clear terms that defendant MACINTOSH was the primary officer in charge of this case and that he and Lt. Gauntt were only backup officers who wanted to ensure that Scanlan and the plaintiff's daughter and their personal effects got home safely.

136.    Despite the fact that defendant MACINTOSH had knowledge that plaintiff suffered from a prior back injury at a bad back, and that his forcible and unlawful arrest of her caused

her to further injury, defendant caused the plaintiff to sit in the rear of the patrol car for approximately 20 minutes, without requesting medical aid and before leaving the scene to transport plaintiff to defendant CHESILHURST PD for processing.

137.    Defendant MACINTOSH drove the plaintiff in his patrol vehicle for approximately five (5) minutes, until arriving at defendant CHESILHURST PD at approximately 4:30 p.m., or almost 30 minutes after the aforesaid incident between the plaintiff and defendant began.

138.    Upon arrival at defendant CHESILHURST PD, defendant MACINTOSH ordered plaintiff out of the vehicle and she complied.

139.    Defendant MACINTOSH held onto plaintiff's right arm using his hands, as he escorted and pushed plaintiff up a set of stairs leading to the entrance of the building.

140.    While plaintiff was ascending the stairs, defendant MACINTOSH shoved her into the side of the building, causing plaintiff's left arm, shoulder and side to strike the wall, causing her to suffer further injury, pain and discomfort.

141.    Defendant MACINTOSH then abruptly pulled plaintiff back from the wall and toward him after she struck the wall, and he began pushing her up the remaining stairs.

142.    Defendant MACINTOSH escorted plaintiff into the building, where she was placed on a bench and remained in handcuffs.

143.    While inside defendant CHESILHURST PD, plaintiff remained in shock and continued to suffer from severe pain and discomfort in her back, shoulder, hips, arms and legs, and from bruising, cuts and abrasions as a direct result of the defendant MACINTOSH'S earlier attack on her out on the roadway.

144.    Plaintiff remained seated on the bench in handcuffs while other unidentified officers from defendant CHESILHURST PD assisted with processing plaintiff's arrest, including taking her photograph, gathering information and fingerprinting her.

145.    At approximately 5:10 PM, plaintiff was read her statement of rights and provided with a Statement of Rights Form, which she refused to initial.

146.    During the processing phase which lasted approximately one hour or perhaps longer, defendant MACINTOSH mocked the plaintiff and laughed at her while he wrote out traffic tickets, boasting that she was going to jail.

147.    While the plaintiff remained seated on the bench in handcuffs, she was cold and had requested a blanket, which was provided to her by an unidentified officer.

148.    Throughout the duration of the processing phase, plaintiff continued to suffer from shock and from significant pain and discomfort in her back, hips, shoulder, legs and torso, and extensive bruising and cuts, as a result of the conduct of defendant MACINTOSH during the incident on the roadway, as aforesaid.

149.    Plaintiff was not afforded medical treatment or medical care of any kind, despite the fact that defendant MACINTOSH and other unidentified officers knew or were aware that plaintiff had suffered significant injuries as a result of the conduct of defendant MACINTOSH during the incident which occurred on the roadway, as aforesaid.

150.    After plaintiff had been sitting on the bench in handcuffs for approximately 1 ½ hours or longer, she requested to go to the bathroom.

151.    An unidentified police officer removed the handcuffs from the plaintiff and permitted her to use the restroom.

152.    As the plaintiff stood up from the bench, she immediately collapsed due to severe back pain and pain and weakness in her right leg, which gave out from under her.

153.    As she collapsed, the police officer attending to her prevented her from falling to the ground.

154.    Plaintiff was able to regain some energy and her balance despite her injuries, and she was able to use the bathroom.

155.    Only after plaintiff collapsed did one of the unidentified police officers contact local EMTs to come to defendant CHESILHURST PD to provide medical care to the plaintiff.

156.    After the local emergency medical technicians (EMT's) arrived at defendant CHESILHURST PD, plaintiff was placed into an ambulance and transported to the Emergency Room at Virtua Memorial Hospital in Voorhees, New Jersey.

157.    Plaintiff received treatment in the Emergency Room at Virtua Memorial Hospital and was discharged approximately four (4) hours or more hours later, at approximately 11:30 PM.

158.    Scanlan's mother picked up the plaintiff from the emergency room and drove her home.

159.    As a result of the incident involving defendant MACINTOSH, plaintiff suffered serious personal injuries to her back, left shoulder, both arms and legs, shock, anxiety, emotional trauma, and emotional distress, which injuries are permanent in nature.

160.    Defendant MACINTOSH prepared a Use of Force Report dated June 14, 2019, wherein he described plaintiff as "combative", and that plaintiff "resisted police officer control" and caused a "physical threat/attack on officer or another", all of which was untrue and constituted false statements by defendant.

161.    In the Use of Force Report, defendant MACINTOSH confirmed that he arrested plaintiff and utilized a compliance hold, and his hands and fists as the nature of force he used against her.

162.    In the Use of Force Report, defendant MACINTOSH noted that he arrested plaintiff and was charging her with violations of N.J.S.A. 2C:29-2A(3), N.J.S.A. 2C:12-1B(5)(A) and N.J.S.A. 39:4-88.

163.    At no time did the plaintiff commit any act amounting to violations of N.J.S.A. 2C:29-2A(3), N.J.S.A. 2C:12-1B(5)(A) or N.J.S.A. 39:4-88.

164.    The charges which defendant MACINTOSH noted in the Use of Force Report regarding plaintiff's conduct as to him were demonstrably false, and served as a pretext to cover up his own actions that amounted to an unlawful false arrest without probable cause, an unlawful detention and/or false imprisonment of the plaintiff without probable cause, and defendant's excessive, unwarranted and unlawful use of force against plaintiff when he physically attacked and assaulted the plaintiff off the roadway, as aforesaid.

165.    Defendant MACINTOSH completed and filed a Complaint-Summons dated June 14, 2019, bearing Complaint number 0409 S 2019, charging plaintiff with a violation of N.J.S.A. 2C:29-2A(3)(A), a charge of third-degree resisting arrest, and N.J.S.A. 2C:12-1B(5)(A), a charge of fourth-degree aggravated assault on a police officer.

166.    In the Complaint-Summons, defendant MACINTOSH falsely stated that plaintiff did:

> "PURPOSELY PREVENT A LAW ENFORCEMENT OFFICER FROM AFFECTING A LAWFUL ARREST BY USING OR THREATENING TO USE PHYSICAL FORCE OR VIOLENCE AGAINST PATROLMEN MACINTOSH, A LAW ENFORCEMENT OFFICER [SPECIFICALLY BY KICKING THE COMPLAINANT AND PHYSICALLY PLACING HER ARMS UNDER HER STOMACH, REFUSING TO COMPLY WITH LAWFUL COMMANDS] IN VIOLATION OF N.J.S.A. 2C:29-2A(3)(A) MAKING THIS A CRIME OF THE THIRD-DEGREE."

167.    Defendant MACINTOSH'S sworn written statements in the Complaint-Summons and in his Affidavit of Probable Cause supporting the charge of N.J.S.A. 2C:29-2A(3)(A) were patently false because defendant had no probable cause to effectuate a lawful arrest of the plaintiff simply because she made a comment to him about shutting her door "the rest of the way", which verbal statement was the only act that plaintiff performed before defendant became enraged and opened her car door and dragged her out of the vehicle and threw her to the ground.

168.     Defendant MACINTOSH'S sworn written statements supporting the charge of N.J.S.A. 2C:29-2A(3)(A) were patently false because plaintiff never used physical force or violence against defendant that included kicking him and placing her arms under her stomach as a means of refusing to comply with any lawful commands of the defendant.

169.     Defendant MACINTOSH'S sworn written statements supporting the charge of N.J.S.A. 2C:29-2A(3)(A) were patently false because plaintiff acted in a lawful and justified manner to defend and protect herself *after* defendant commenced his outright assault on her by forcibly grabbing and handcuffing her left arm, and forcibly pulling and dragging her out of the vehicle and throwing her to the ground, without probable cause necessary to support her arrest and detention.

170.     In the Complaint-Summons, defendant MACINTOSH falsely stated that plaintiff did:

> "COMMITTED AGGRAVATED ASSAULT BY PURPOSELY, KNOWINGLY, OR RECKLESSLY CAUSING BODILY INJURY TO (PATROLMEN MACINTOSH), A LAW ENFORCEMENT OFFICER, ACTING IN THE PERFORMANCE OF HIS DUTIES, WHILE IN UNIFORM, OR WHILE EXHIBITING EVIDENCE OF HIS AUTHORITY, [SPECIFICALLY BY PURPOSELY KICKING PTL. MACINTOSH IN THE LEG WHILE HE WAS ATTEMPTING TO PERFORM HIS DUTIES IN VIOLATION OF N.J.S. 2C:12-1(B)(5)(A). MAKING THIS A CRIME OF THE 4TH DEGREE".

171.     Defendant MACINTOSH'S sworn written statements in the Complaint-Summons and in his Affidavit of Probable Cause supporting the charge of N.J.S.A. 2C: 12-1(B)(5)(A) were patently false because plaintiff at no time committed any act amounting to an aggravated assault upon defendant by kicking him while he was attempting to perform his official duties.

172.     Defendant MACINTOSH'S sworn written statements supporting the charge of N.J.S.A. 2C:12-1(B)(5)(A) were patently false because defendant was not performing lawful duties as a sworn police officer while in uniform, when he lacked sufficient probable cause to lawfully

arrest the plaintiff simply because she made a comment to him about closing her door the "rest of the way", without more.

173.    Defendant MACINTOSH'S sworn written statements supporting the charge of N.J.S.A. 2C:12-1(B)(5)(A) were patently false because defendant was not acting lawfully while in uniform when he grabbed plaintiff's left wrist and handcuffed her, and immediately pulled and dragged her out of the vehicle and threw her to the ground and thereafter used unlawful and excessive force on her by hitting her, pushing her, crushing her with his weight and otherwise using unnecessary and excessive force against her under the circumstances.

174.    Defendant MACINTOSH'S sworn written statements in the Summons-Complaint and Affidavits of Probable Cause which he filed against the plaintiff with respect to the aforesaid charges were demonstrably false and constituted a pretext or cover up of his own unlawful actions, as aforesaid.

175.    Defendant MACINTOSH also issued a traffic ticket to the plaintiff for a violation of N.J.S.A. 39:4-88, for failing to maintain traffic on marked lanes, which was without legal basis or justification and constituted a pretext to cover up defendant's invalid and unlawful stop of the plaintiff and her family after the plaintiff had already pulled off of the road and plaintiff had completed checking the tire on her car.

176.    The charge of failing to maintain traffic on marked lanes, which is codified in N.J.S.A. 39:4-88, and provides in subpart "b", as follows: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety."

177.    Defendant MACINTOSH'S purported reason for stopping plaintiff's vehicle, to wit – the failure to main her lane – fails to provide a lawful basis for defendant having stopped plaintiff's vehicle, as the plaintiff had properly activated her right turn signal and then safely

moved her vehicle across the narrow shoulder and onto the dirt and gravel area off of the roadway, simply to check her tire.

178.    At the time plaintiff moved her vehicle from the travel lane off of the roadway, there were no vehicles near her vehicle either in front, behind or to her left at the time she activated her turn signal and moved her vehicle to the right to check her tire.

179.    Plaintiff ascertained that she was capable of moving her vehicle from the right travel lane on White Horse Pike and off to the right side of the roadway with complete safety, thereby negating defendant MACINTOSH'S fabricated and false statement as a means to justify his unlawful stop of plaintiff's vehicle, and his unlawful actions committed thereafter as described above.

180.    Defendant MACINTOSH'S purported reason for stopping plaintiff's vehicle, to wit - the failure to maintain her lane - did not provide a good-faith or objective basis for defendant MACINTOSH to pull behind and stop plaintiff's vehicle, after plaintiff had safely pulled off of the roadway, had finished checking her tire and was preparing to reenter her vehicle.

181.    Defendant MACINTOSH'S purported reason for stopping plaintiff's vehicle, to wit – the failure to main her lane – amounted to a false statement and unlawful pretext, which the defendant used as a basis to stop plaintiff's vehicle.

182.    Based upon defendant MACINTOSH'S filing of the statements regarding the events which transpired between him and the plaintiff on June 14, 2019, the Camden County Prosecutor presented defendant MACINTOSH'S complaint charging plaintiff with resisting arrest and aggravated assault, to a grand jury.

183.    Upon information and belief, the indictment handed down by the grand jury was based in whole or in substantial part upon the sworn, false statements of defendant MACINTOSH, regarding the events which transpired between him and the plaintiff on June 14, 2019.

184.     Upon information and belief, the grand jury was not presented with exculpatory evidence of defendant's and the other officers' BWC's, which would have exposed and contradicted defendant MACINTOSH'S sworn, false statements contained in the Complaint-Summons regarding the events which transpired between him and the plaintiff on June 14, 2019.

185.     The criminal case against the plaintiff remains pending at the present time.

## FIRST COUNT

**(Sounding in Violations of Plaintiff's Civil Rights Secured Under the Constitution of the United States, Title 42 U.S.C. § 1983, and the Constitution of the State of New Jersey and N.J.S.A. § 10:6-1 *et seq.* by the Borough of Chesilhurst and the Borough of Chesilhurst Police Department (Municipal Liability)**

186.     Plaintiff repeats and incorporates herein each and every allegation set forth in paragraphs 1 through 185 as if same were more fully set forth at length herein.

187.     At all times relevant hereto, defendants BOROUGH OF CHESILHURST and/or the CHESILHURST PD had in effect customs, practices, policies, procedures and rules related to the hiring of employees/police officers, the operation and management of its departments and internal units, and the hiring, supervision, training, education and oversight of its employees, including defendant MACINTOSH.

188.     The aforesaid customs, practices, policies, procedures and rules were adopted, implemented, accepted, authorized and implemented by persons within the BOROUGH and/or CHESILHURST PD having managerial or final decision-making authority.

189.     At all times relevant hereto, the customs, practices, policies, procedures and rules that were created, adopted and implemented by the defendants BOROUGH and/or the CHESILHURST PD, proximately caused, substantially caused and/or contributed to the unlawful actions of the defendant MACINTOSH as set forth hereinabove, which violated

plaintiff's civil rights secured under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and Title 42 U.S.C. §1983 and §1988, and under the Constitution of the state of New Jersey and N.J.S.A. §10:6-1, et seq., as aforesaid.

190. The defendants BOROUGH and/or CHESILHURST PD negligently, carelessly, knowingly and/or intentionally created, adopted, accepted and implemented the aforesaid customs, practices, policies, procedures and rules by high-ranking employees and/or officials who had final decision-making authority, with willful and/or deliberate indifference as to whether those policies violated the civil rights guaranteed to the citizenry, including the plaintiff, under both federal and state laws as aforesaid.

191. Alternatively, the defendants BOROUGH and/or CHESILHURST PD negligently, carelessly, knowingly and/or intentionally omitted, failed and/or refused to create, adopt, implement, enforce or ensure that it had in effect sufficient customs, practices, policies, procedures and rules that mandated or ensured that its employees, including defendant MACINTOSH, had the proper education, training, supervision and oversight necessary to prevent their employees, including defendant MACINTOSH, from engaging in conduct that violated the civil rights of the citizenry, including the plaintiff.

192. The omission, failure and/or refusal of the defendants BOROUGH and/or CHESILHURST PD to create, adopt, implement, enforce and ensure that they had in effect sufficient customs, practices, policies, procedures and rules in place for its employees, including defendant MACINTOSH, with respect to their employees' education, training, supervision and oversight, was done with willful and/or a deliberate indifference to the known or obvious consequences of their failure to do so, which resulted in violation of plaintiff's civil rights under federal and state law, as aforesaid.

193.    Pursuant to the aforesaid customs, practices, policies, procedures and rules of the defendants BOROUGH and/or CHESILHURST PD, *or* as a failure of said defendants to have adopted the appropriate customs, practices, policies, procedures and rules governing the conduct and actions of defendants' employees, defendant MACINTOSH, did not receive the proper and necessary education, training, supervision and oversight sufficient to prevent violations of the constitutional rights of the citizenry, including the civil rights of the plaintiff.

194.    As a direct and proximate result of defendants BOROUGH'S and/or CHESILHURST PD'S negligent, careless, knowing and/or intentional creation, adoption and implementation of its customs, practices, policies, procedures and rules, *or* as a result of defendants' failure to adopt the appropriate and necessary customs, practices, policies, procedures and rules, relating to the education, training, supervision and oversight of its employees including defendant MACINTOSH, the defendant MACINTOSH, while acting under the color of state law, violated plaintiff's civil rights secured under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and Title 42 U.S.C. §1983 and §1988, and under the Constitution of the state of New Jersey and N.J.S.A. §10:6-1, et seq., resulting in defendant MACINTOSH committing false arrest, false imprisonment, use of excessive force, unreasonable search and seizure, abuse of process, a violation of plaintiff's free-speech rights, the failure to provide plaintiff with adequate, timely and necessary medical care, the manipulation/destruction and alteration of evidence, among other violations of both federal and state law, as aforesaid.

195.    As a direct and proximate result of defendants BOROUGH'S and/or CHESILHURST PD'S conduct with regard to their  negligent, careless, knowing and/or intentional creation, adoption and implementation of its customs, practices, policies, procedures and rules, *or* as a result of defendants' failure to adopt the appropriate and necessary customs, practices, policies,

procedures and rules, relating to the education, training, supervision and oversight of its employees including defendant MACINTOSH, the defendants BOROUGH and/or CHESILHURST PD violated plaintiff's civil rights secured under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States and Title 42 U.S.C. §1983 and §1988, and under the Constitution of the state of New Jersey and N.J.S.A. §10:6-1, et seq.

196.    As a direct and proximate result of the conduct of the defendants BOROUGH and/or CHESILHURST as aforesaid, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

**WHEREFORE**, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the First Count against defendants BOROUGH OF CHESILHURST an BOROUGH OF CHESILHURST POLICE DEPARTMENT, violations of her civil rights under the United States Constitution, and pursuant to 42 U.S.C. §1983 and §1988, and under the Constitution of the State of New Jersey and N.J.S.A. §10:6-1, et seq., as follows:

a.    Compensatory damages;

b.    Economic and monetary damages for lost past and future salary and benefits;

c.    Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

d.    Consequential damages;

e.    Punitive damages;

  f.  Award of attorney's fees, costs of suit and expert fees; and

  g.  Any additional relief that the Court deems just and appropriate.

## SECOND COUNT

**(Sounding in Violations of Plaintiff's Civil Rights Secured under the Constitution of the United States and Title 42 U.S.C. §1983, by Defendant Tyquan D. Macintosh, individually and in his official capacity, for False Arrest of the Plaintiff)**

197. Plaintiff repeats and incorporates each and every allegation set forth in paragraphs 1 through 196 as if same were more fully set forth herein.

198. At all times relevant hereto, defendant MACINTOSH, individually and in his official capacity, and while acting under the color of state law, violated plaintiff JAYME L. JEFFERSON'S civil rights, privileges and/or immunities secured by the Constitution and Laws of the United States secured under the Fourth and Fourteenth Amendments to the Constitution of the United States and Title 42 U.S.C. §1983, by committing a false arrest the plaintiff.

199. Defendant MACINTOSH had pulled his police vehicle behind plaintiff's vehicle on the dirt and gravel area off of White Horse Pike well after plaintiff had already pulled off of the roadway, exited her vehicle, checked her tire and had returned to her driver's side door to reenter her vehicle.

200. Plaintiff at all times properly operated her vehicle in accordance with the traffic laws of the state of New Jersey and at no point failed to maintain her lane, or commit a violation of N.J.S.A. 39:4-88.

201. Plaintiff's decision to simply pull her vehicle off of the roadway to check her tire, which required that she move across the shoulder line and then off of the roadway, which was done safely and without danger to any vehicles or persons, does not constitute a failure to maintain her lane, and does not amount to a violation of N.J.S.A. 39:4-88.

202.    Defendant MACINTOSH'S alleged reason for stopping and detaining plaintiff and her family, predicated upon plaintiff's alleged failure to maintain her lane, constituted a fabricated reason or pretext without basis to justify his unlawful stop, questioning, harassment, detention and arrest of the plaintiff.

203.    Defendant MACINTOSH lacked sufficient probable cause to believe that plaintiff committed the traffic offense of failing to maintain her lane in violation of N.J.S.A. 39:4-88.

204.    Defendant MACINTOSH'S actions after exiting his vehicle and approaching the plaintiff, questioning her and asserting actual or apparent authority over her by repeatedly directing her to get into her car was done without sufficient probable cause to believe that plaintiff had committed the traffic offense of failing to maintain her lane in violation of N.J.S.A. 39:4-88.

205.    Defendant MACINTOSH repeatedly directed plaintiff to get back into her car and to give him her driving credentials, stating, "you can get in the car and give me your documents", in a belligerent and agitated manner.

206.    Defendant MACINTOSH'S repeated instructions to the plaintiff to get back in her car and give him her credentials unequivocally establishes that defendant had no probable cause to effectuate an arrest of the plaintiff for any traffic offense or criminal activity.

207.    As plaintiff was re-entering her vehicle and sat in the driver's seat in full compliance with defendant's instructions to get back in her car, defendant MACINTOSH initially closed the door on plaintiff's sneaker.

208.    In response to defendant MACINTOSH closing the door initially on her sneaker, plaintiff commented, "I'll shut my door thank you,", to which defendant responded, "I shut your door."

209.    Defendant MACINTOSH then stated to the plaintiff, "shut the door and don't open it again" in a belligerent and aggressive tone.

210.    Defendant MACINTOSH'S repeated statements directing the plaintiff to get into her car, shut the door and to not open it again, establishes that even defendant either knew or believed that he had no probable cause to arrest the plaintiff even if he believed that she did commit a violation of N.J.S.A. 39:4-88.

211.    In response to defendant MACINTOSH'S statements directing plaintiff to get into the car and shut the door, plaintiff simply commented to him in a firm but calm tone, "I did and I was shutting it the rest of the way", and nothing more.

212.    As a direct response to plaintiff's comment about shutting her door the "rest of the way", and without more, defendant MACINTOSH suddenly and without warning lost control of himself and became enraged solely because of plaintiff's comment about shutting her door, with no further actions on the part of the plaintiff that would create, justify or establish probable cause which was constitutionally required as a predicate to arrest the plaintiff.

213.    Within only a couple of seconds of plaintiff having made the comment about shutting her door, defendant MACINTOSH suddenly opened plaintiff's door and aggressively yelled at her repeatedly to get out of her car, for no reason.

214.    As defendant MACINTOSH was quickly and aggressively yelling at the plaintiff to get out of her car as he opened her door, the plaintiff was terrified and scared by defendant's aggressive and belligerent manner and his actions, prompting her to ask him to get another officer to come to the scene, to which defendant outright ignored or refused

215.    Defendant MACINTOSH immediately seized plaintiff's left arm with his left hand, and placed a handcuff on her arm above the left wrist.

216.    After defendant MACINTOSH grabbed the plaintiff's left arm and placed a handcuff on her, he forcibly pulled and dragged her from the vehicle and threw her to the ground from the driver's seat, causing her to strike the ground with significant force.

217.    Defendant MACINTOSH immediately thereafter engaged in abusive verbal comments against plaintiff and defendant utilized excessive force as he threw her around on the ground, crushed her with his weight, pushed her body and face into the dirt and gravel, and by continually yelling at her and demanding that she give him her arm under circumstances where she was physically unable to comply with his instruction because of the very force he was using against her at the time.

218.    After defendant MACINTOSH completed handcuffing both of the plaintiff's hands and completing her arrest, he stood her up and placed her into the rear seat of his patrol vehicle.

219.    Defendant MACINTOSH'S arrest of the plaintiff was done solely because of plaintiff's comment about her closing her door the "rest of the way," and nothing more.

220.    Defendant MACINTOSH'S arrest of the plaintiff was effectuated without probable cause, was unlawful and constituted a violation of the plaintiff's Fourth and Fourteenth Amendment rights to be free of unlawful searches and warrantless seizures of the person.

221.    As a direct and proximate result of the conduct of the defendant MACINTOSH amounting to a false arrest of plaintiff, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

        **WHEREFORE**, Plaintiff JAYME JEFFERSON hereby demands judgment on the Second Count against defendant TYQUAN D. MACINTOSH, individually and in his official

capacity, for violations of her civil rights under the United States Constitution, and pursuant to 42 U.S.C. §1983 and §1988, as follows:

    a.    Compensatory damages;

    b.    Economic and monetary damages for lost past and future salary and benefits;

    c.    Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

    d.    Consequential damages;

    e.    Punitive damages;

    f.    Award of attorney's fees, costs of suit and expert fees; and

    g.    Any additional relief that the Court deems just and appropriate.

## THIRD COUNT

**(Sounding in Violations of Plaintiff's Civil Rights Secured under the Constitution of the United States and Title 42 U.S.C. §1983, by Defendant Tyquan D. Macintosh, individually and in his official capacity, for False Imprisonment of the Plaintiff)**

222.    Plaintiff repeats and realleges each and every allegation set forth in paragraph 1 through 221 as if same were more fully set forth at length herein.

223.    Defendant MACINTOSH effectuated an unlawful arrest of the plaintiff without probable cause.

224.    After defendant MACINTOSH unlawfully arrested the plaintiff without probable cause, he caused her to remain in custody and be detained in handcuffs at the scene of the incident and thereafter in the physical location of the defendant CHESILHURST PD, without the ability or right to move about freely.

225.   Defendant MACINTOSH, and other unidentified officers of the defendants BOROUGH and CHESILHURST PD, unlawfully detained the plaintiff pursuant to an arrest made without probable cause, thereby constituting a false imprisonment of the plaintiff.

226.   As a direct and proximate result of the conduct of the defendant MACINTOSH amounting to the false imprisonment of the plaintiff, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

**WHEREFORE**, Plaintiff JAYME JEFFERSON hereby demands judgment on the Third Count against defendant TYQUAN D. MACINTOSH, individually and in his official capacity, for violations of her civil rights under the United States Constitution, and pursuant to 42 U.S.C. §1983 and §1988, as follows:

a.   Compensatory damages;

b.   Economic and monetary damages for lost past and future salary and benefits;

c.   Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

d.   Consequential damages;

e.   Punitive damages;

f.   Award of attorney's fees, costs of suit and expert fees; and

g.   Any additional relief that the Court deems just and appropriate.

**FOURTH COUNT**

**(Sounding in Violations of Plaintiff's Civil Rights Secured under the Constitution of the United States and Title 42 U.S.C. §1983, by Defendant Tyquan D. Macintosh, individually and in his official capacity, for Excessive Use of Force on the Plaintiff)**

227.    Plaintiff repeats and reasserts each and every allegation set forth in paragraphs 1 through 226 as if same were more fully set forth at length herein.

228.    At all times relevant hereto, the Attorney General of the State of New Jersey (AG) had in effect a policy pertaining to the Use of Force which applied to all sworn law enforcement officers throughout the state of New Jersey, including all police officers employed by defendants BOROUGH and CHESILHURST PD.

229.    The AG policy pertaining to the Use of Force set forth the minimum standard to be applied and followed by a sworn law enforcement officer during the discharge of his or her official capacity as a police officer.

230.    Upon information and belief, the defendants BOROUGH and CHESILHURST PD had adopted and implemented the AG's policy regarding the Use of Force, or said defendants adopted a policy regarding the Use of Force which was more restrictive than the AG's policy.

231.    Notwithstanding, at a minimum, defendants BOROUGH and CHESILHURST PD adopted and implemented a Use of Force policy as a minimum standard to address situations regarding the appropriate force to be used when sworn police officers interacts with the citizenry.

232.    Defendant MACINTOSH was subject to and required to adhere to the defendants' Use of Force policy.

233.    Defendant MACINTOSH utilized unlawful and excessive physical force against the plaintiff when plaintiff was sitting in her car seat and only commented about closing her door the "rest of the way", and then suddenly and without warning defendant forcibly and

aggressively grabbed plaintiff's left arm and handcuffed her above the left wrist, and immediately pulled and dragged her out of the vehicle and threw her to the ground, causing her to strike her body on the ground with significant force.

234.    After defendant MACINTOSH dragged plaintiff from a seated position in her vehicle and threw her to the ground, he continued to utilize unlawful and excessive physical force against the plaintiff, by throwing her around from side to side on the ground, crushing her body into the ground with his weight, pressing his knee against her body, slapping and hitting her, pulling her arm in a direction which caused her pain and discomfort, among other acts of unlawful physical and excessive force which caused plaintiff to suffer serious injury.

235.    Defendant MACINTOSH used unreasonable and excessive force against the plaintiff under circumstances where there was no probable cause to arrest the plaintiff, and no objectively reasonable basis to utilize physical force against her under the existing circumstances and conditions.

236.    Defendant MACINTOSH used unreasonable and excessive force against the plaintiff under circumstances where the plaintiff was simply sitting in her seat in her car, and had only made a comment to the defendant about closing her door the "rest of the way."

237.    Defendant MACINTOSH used unreasonable and excessive force against the plaintiff under circumstances where defendant had no need to overcome resistance by the plaintiff because she was only sitting in her seat; there was no need to protect himself or any other officer a third person from unlawful force by the plaintiff; there was no need to protect property; and, defendant had no lawful objective to utilize physical force or unreasonable or excessive force against the plaintiff either to effectuate an arrest, or in furtherance of some other law enforcement objective.

238.    Defendant MACINTOSH'S use of unreasonable and excessive force against the plaintiff as aforesaid, violated the Use of Force policy promulgated and adopted by the New Jersey AG and the defendants BOROUGH and/or CHESILHURST PD, during his interaction with the plaintiff on the roadway.

239.    Defendant MACINTOSH thereafter utilized necessary, unreasonable and excessive force after arriving at defendant CHESILHURST PD, when he slammed plaintiff's left shoulder inside into the wall while he was escorting and pushing plaintiff up the stairs toward the building, causing her to suffer injury.

240.    Defendant MACINTOSH'S use of unreasonable and excessive force against the plaintiff in pushing her against the wall and causing her to suffer injury, violated the Use of Force policy promulgated and adopted by the New Jersey AG and the defendants BOROUGH and/or CHESILHURST PD, while he escorted the plaintiff into Police Headquarters.

241.    Defendant MACINTOSH'S use of unreasonable and excessive force against the plaintiff in pushing her against the wall and causing her to suffer injury, occurred under circumstances where there was no need to for the defendant to overcome resistance by the plaintiff because she was only walking up stairs to go into Police Headquarters while handcuffed, defendant had no need to protect himself or any other officer a third person from unlawful force by the plaintiff, there was no need to protect property, and defendant had no lawful objective to utilize physical force or unreasonable or excessive force against the plaintiff in furtherance of some law enforcement objective, as a means to lawfully justify slamming plaintiff's left shoulder into the wall.

242.    Defendant MACINTOSH'S use of force against the plaintiff was at all times excessive and not objectively reasonable.

243.   Defendant MACINTOSH'S use of unreasonable and excessive force against plaintiff as aforesaid, violated the plaintiff's civil rights guaranteed under the First Amendment, Fourth Amendment and Fourteenth Amendment of the United States Constitution, in violation of her right of free speech and her right to be free of excessive and unreasonable use of force by law enforcement authority exerted under the color of state law.

244.   As a direct and proximate result of the conduct of the defendant MACINTOSH amounting to unlawful and excessive use of force against the plaintiff, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

**WHEREFORE**, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the Fourth Count against defendant TYQUAN D. MACINTOSH, individually and in his official capacity, for violations of her civil rights under the United States Constitution, and pursuant to 42 U.S.C. §1983 and §1988, as follows:

a.   Compensatory damages;

b.   Economic and monetary damages for lost past and future salary and benefits;

c.   Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

d.   Consequential damages;

e.   Punitive damages;

f.   Award of attorney's fees, costs of suit and expert fees; and

g.   Any additional relief that the Court deems just and appropriate.

## FIFTH COUNT

**(Sounding in Violations of Plaintiff's Civil Rights Secured under the Constitution of the United States and Title 42 U.S.C. §1983, by Defendant Tyquan D. Macintosh, individually and in his official capacity, for False Swearing and Abuse of Process against the Plaintiff)**

245.    Plaintiff repeats and reasserts each and every allegation set forth in paragraphs 1 through 244 as if same were more fully set forth at length herein.

246.    Defendant MACINTOSH committed an act of false swearing when he prepared and filed the Complaint number 0409 S 2019, charging plaintiff with a violation of N.J.S.A. 2C:29-2A(3)(A), a charge of third-degree resisting arrest, and N.J.S.A. 2C:12-1B(5)(A), a charge of fourth-degree aggravated assault on a police officer.

247.    Defendant MACINTOSH of the aforesaid criminal charges against the plaintiff as a pretext, or cover up for his unlawful and unconstitutional actions which caused injury to the plaintiff, as aforesaid.

248.    As a direct and proximate result of defendant MACINTOSH'S false statements as contained in the Complaint and, upon information and belief, his false testimony during grand jury proceedings, plaintiff was indicted for criminal charges for which there is no probable cause or basis to support set indictment.

249.    As a direct and proximate result of defendant MACINTOSH'S false statements as contained in the Complaint charging plaintiff with the aforesaid criminal violations, the plaintiff has been caused to defend charges set forth in the indictment, which charges remain pending at the present time.

250.    Defendant MACINTOSH'S false statements as contained in the Complaint and, upon information and belief, his false testimony during grand jury proceedings, constitutes an abuse of process which has resulted in damages and injury to the plaintiff.

251.    As a direct and proximate result of the conduct of defendant MACINTOSH as aforesaid, the plaintiff has suffered economic and non-economic damages and injuries which continue she defends charges set forth in indictment that are predicated upon the false statements of defendant.

**WHEREFORE**, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the Fifth Count against defendant TYQUAN D. MACINTOSH, individually and in his official capacity, for violations of her civil rights under the United States Constitution, and pursuant to 42 U.S.C. §1983 and §1988, as follows:

a.    Compensatory damages;

b.    Economic and monetary damages for lost past and future salary and benefits;

c.    Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

d.    Consequential damages;

e.    Punitive damages;

f.    Award of attorney's fees, costs of suit and expert fees; and

g.    Any additional relief that the Court deems just and appropriate.

## SIXTH COUNT

**(Sounding in Violations of Plaintiff's Civil Rights Secured under the Constitution of the United States and Title 42 U.S.C. §1983, by Defendant Tyquan D. Macintosh, individually and in his official capacity, for Failure/Refusal to Provide Plaintiff with Adequate and Necessary Medical Care)**

252.    Plaintiff repeats and reasserts each and every allegation set forth in paragraph 1 through 251 as if same were more fully set forth at length herein.

253.    At all times relevant hereto, defendant MACINTOSH, individually and in his official capacity, and while acting under the color of state law, violated plaintiff JAYME L. JEFFERSON'S civil rights, privileges and/or immunities secured under the Eighth and Fourteenth Amendments to the Constitution of the United States and Title 42 U.S.C. §1983, by failing or refusing to provide plaintiff with adequate medical care while the plaintiff was a detainee under the defendant's care, custody and control.

254.    During the course of the arrest, the plaintiff and Scanlan advised defendant MACINTOSH that plaintiff had a prior back injury, and that he should be careful with the plaintiff.

255.    During the course of the arrest, the plaintiff told defendant MACINTOSH on more than one occasion that she had a bad back and that he was hurting her.

256.    Defendant MACINTOSH knew or should have known that his actions while conducting his arrest of the plaintiff cause plaintiff to suffer injury resulting pain and discomfort, the increased risk of further injury, and pain and permanent disability.

257.    Defendant MACINTOSH knew or should have known that during and immediately upon his arrest of the plaintiff, the plaintiff needed and required adequate medical treatment to attend to the injuries she suffered as a result of the brutality and beating that defendant put upon the plaintiff.

258.    After defendant MACINTOSH place plaintiff in his patrol car, he spoke with Scanlan who told him again that the plaintiff suffered from a bad back and that she was hurt, to which defendant responded, "Give me your ID, I'm not worried about that right now".

259.    Scanlan continued advised defendant MACINTOSH that the plaintiff had a bad back, which defendant MACINTOSH continued to ignore, and instead he repeatedly asked Scanlan for identification, which Scanlan provided to him.

260.    Defendant MACINTOSH showed a deliberate indifference to the plaintiff's need for immediate medical care, despite both plaintiff and Scanlan advising him repeatedly that plaintiff had a bad back, and that he was hurting her during the arrest.

261.    Defendant MACINTOSH completely ignored and dismissed the information conveyed to him by both the plaintiff and Scanlan that the plaintiff had a bad back, that the defendant was hurting her during the arrest and that she was injured, as a means to punish and make the plaintiff suffer from her injuries that were caused by defendant MACINTOSH himself.

262.    Despite having knowledge of the plaintiff suffered from a back injury and was in need of medical care at the time of her arrest and thereafter, defendant MACINTOSH failed to call emergency medical services to the scene, and instead caused the plaintiff to sit in the rear of the patrol car for approximately 20 minutes until he drove her to Police Headquarters.

263.    After arriving at police headquarters, defendant MACINTOSH caused the plaintiff to suffer further injury and distress when he utilized excessive force against her by slamming her left shoulder inside into the wall while he pushed her up the stairs to go into the building at Police Headquarters.

264.    After then escorting the plaintiff into Police Headquarters, defendant MACINTOSH forced the plaintiff to sit on a bench in handcuffs, while suffering from her injuries, without requesting any medical care which was necessary to give her appropriate treatment for her injuries suffered at the hands of defendant himself.

265.    After plaintiff had remained in Police Headquarters for approximately 1 ½ to 2 hours during the processing phase, she attempted to go to the bathroom and partially collapsed due to the pain in her back and pain and weakness in her right leg.

266.    Only after plaintiff had partially collapsed in an effort to go to the bathroom did an unidentified police officer employed by defendants BOROUGH and/or CHESILHURST PD,

call local medical emergency services to come to Police Headquarters to transport the plaintiff to the hospital for medical treatment.

267.    Defendant MACINTOSH intentionally, purposefully, and with deliberate indifference to the plaintiff's need for medical treatment, violated plaintiff's civil rights guaranteed by the Eighth Amendment and Fourteenth Amendment to the United States Constitution, by denying her necessary and adequate medical care.

268.    As a direct and proximate result of the conduct of the defendant MACINTOSH amounting to a violation of the plaintiff's civil rights under the Eighth and Fourteenth Amendment to the Constitution of the United States, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and private areas, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

**WHEREFORE**, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the Sixth Count against defendant TYQUAN D. MACINTOSH, individually and in his official capacity, for violations of her civil rights under the United States Constitution, and pursuant to 42 U.S.C. §1983, as follows:

a.    Compensatory damages;

b.    Economic and monetary damages for lost past and future salary and benefits;

c.    Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

d.    Consequential damages;

e.    Punitive damages;

f.      Award of attorney's fees, costs of suit and expert fees; and

g.      Any additional relief that the Court deems just and appropriate.

## SEVENTH COUNT

**(Sounding in Violations of Plaintiff's Civil Rights Secured Under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq., by Defendant Tyquan D. Macintosh, individually and in his official capacity, for False Arrest of the Plaintiff)**

269.    Plaintiff repeats and reasserts each and every allegation set forth in paragraphs 1 through 268 as if same were more fully set forth at length herein.

270.    Defendant MACINTOSH, individually and in his official capacity, violated plaintiff JAYME L. JEFFERSON'S civil rights under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq., by falsely arresting her.

271.    Defendant MACINTOSH'S arrest of the plaintiff was done without probable cause, was unlawful and constituted a violation of the plaintiff's civil rights guaranteed under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq., to be free of unlawful searches and seizures of her person.

272.    As a direct and proximate result of the conduct of the defendant MACINTOSH amounting to a false arrest of plaintiff, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

**WHEREFORE**, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the Seventh Count against defendant TYQUAN D. MACINTOSH, individually and in his official

capacity, for violations of her civil rights under the Constitution of the State of New Jersey and pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq., as follows:

    a.    Compensatory damages;

    b.    Economic and monetary damages for lost past and future salary and benefits;

    c.    Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

    d.    Consequential damages;

    e.    Punitive damages;

    f.    Award of attorney's fees, costs of suit and expert fees; and

    g.    Any additional relief that the Court deems just and appropriate.

### EIGHTH COUNT

**(Sounding in Violations of Plaintiff's Civil Rights Secured Under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq.,
by Defendant Tyquan D. Macintosh, individually and in his official capacity, for False Imprisonment of the Plaintiff)**

273.    Plaintiff repeats and reasserts each and every allegation set forth in paragraphs 1 through 272 as if same were more fully set forth at length herein.

274.    Defendant MACINTOSH, individually and in his official capacity, violated plaintiff JAYME L. JEFFERSON'S civil rights under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq., by falsely imprisoning her.

275.    Defendant MACINTOSH committed an unlawful detention and false imprisonment of the plaintiff from the time that defendant arrested her on the roadway until she was released to EMT's from Police Headquarters to be transported to the Emergency Room at Virtua Medical Center for treatment.

276.    Defendant MACINTOSH'S false imprisonment and unlawful detention of the plaintiff was done without probable cause, and constituted a violation of the plaintiff's civil rights guaranteed under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq.

277.    As a direct and proximate result of the conduct of the defendant MACINTOSH amounting to false imprisonment of the plaintiff, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

**WHEREFORE**, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the Eighth Count against defendant TYQUAN D. MACINTOSH, individually and in his official capacity, for violations of her civil rights under the Constitution of the State of New Jersey and pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq., as follows:

a.    Compensatory damages;

b.    Economic and monetary damages for lost past and future salary and benefits;

c.    Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

d.    Consequential damages;

e.    Punitive damages;

f.    Award of attorney's fees, costs of suit and expert fees; and

g.    Any additional relief that the Court deems just and appropriate.

## NINTH COUNT

**(Sounding in Violations of Plaintiff's Civil Rights Secured Under the Constitution of the
State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq.,
by Defendant Tyquan D. Macintosh, for Excessive Use of Force upon the Plaintiff)**

278.    Plaintiff repeats and reasserts each and every allegation set forth in paragraphs 1 through
277 as if same were more fully set forth at length herein.

279.    Defendant MACINTOSH, individually and in his official capacity, violated plaintiff
JAYME L. JEFFERSON'S civil rights under the Constitution of the State of New Jersey and
the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq., by using unreasonable and excessive force
against her, causing her to suffer serious personal injuries.

280.    Defendant MACINTOSH'S use of unreasonable and excessive force violated the
plaintiff's civil rights guaranteed under the Constitution of the State of New Jersey and the NJ
Civil Rights Act, N.J.S.A. 10:6-1, et seq.

281.    As a direct and proximate result of the conduct of the defendant MACINTOSH
amounting to an unlawful use of excessive force against the plaintiff, the plaintiff suffered
serious personal injuries to various parts of her body including but not limited to her back,
shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic
losses for medical expenses to treat her injuries, as well as a loss of income, impairment of
reputation, among other economic and non-economic damages to be proven at the time of trial.

    **WHEREFORE**, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the
Ninth Count against defendant TYQUAN D. MACINTOSH, individually and in his official
capacity, for violations of her civil rights under the Constitution of the State of New Jersey and
pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq., as follows:

    a.      Compensatory damages;

    b.      Economic and monetary damages for lost past and future salary and benefits;

     c.      Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

     d.      Consequential damages;

     e.      Punitive damages;

     f.      Award of attorney's fees, costs of suit and expert fees; and

     g.      Any additional relief that the Court deems just and appropriate.

**<u>TENTH COUNT</u>**

**(Sounding in Violations of Plaintiff's Civil Rights Secured Under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq., by Defendant Tyquan D. Macintosh, individually and in his official capacity, for Failure/Refusal to Provide Plaintiff with Adequate and Necessary Medical Care)**

282.    Plaintiff repeats and reasserts each and every allegation set forth in paragraphs 1 through 281 as if same were more fully set forth at length herein.

283.    Defendant MACINTOSH, individually and in his official capacity, violated plaintiff JAYME L. JEFFERSON'S civil rights under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq., by failing and refusing to provide the plaintiff with necessary and adequate medical care while she was a detainee in defendant's care, custody and control.

284.    Defendant MACINTOSH'S failure and/or refusal to provide the plaintiff with adequate and necessary medical care violated her civil rights guaranteed under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq.

285.    Defendant MACINTOSH'S failure and/or refusal to provide plaintiff with necessary and adequate medical care was intentional, purposeful and done with deliberate indifference to the plaintiff's need for immediate, adequate and necessary medical treatment.

286.     As a direct and proximate result of the conduct of the defendant MACINTOSH in failing and otherwise refusing to provide adequate medical care and treatment to the plaintiff, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

WHEREFORE, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the Tenth Count against defendant TYQUAN D. MACINTOSH, individually and in his official capacity, for violations of her civil rights under the Constitution of the State of New Jersey and pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq., as follows:

a.     Compensatory damages;

b.     Economic and monetary damages for lost past and future salary and benefits;

c.     Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

d.     Consequential damages;

e.     Punitive damages;

f.     Award of attorney's fees, costs of suit and expert fees; and

g.     Any additional relief that the Court deems just and appropriate.

**ELEVENTH COUNT**

**(Sounding Violations of Plaintiff's Civil Rights Secured under the Constitution
of the United States and Title 42 U.S.C. §1983, by Defendant Tyquan D. Macintosh,
Based upon a Conspiracy)**

287.    Plaintiff repeats and incorporates herein each and every allegation set forth in paragraph 1 through 286 as if same were more fully set forth at length herein.

288.    At all times relevant hereto, defendant MACINTOSH and defendant JOHN DOE, acting individually and in his/her official capacity, and while acting under the color of state law, agreed and conspired to violate the civil rights, privileges and/or immunities afforded to the plaintiff and secured by the Constitution and Laws of the United States under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and Title 42 U.S.C. §1983 and §1985, to unlawfully commit false arrest and false imprisonment, to fail or refuse to provide plaintiff with necessary and adequate medical care in a timely fashion, to allow defendant MACINTOSH to submit and file a Complaint-Summons and Affidavits of Probable Cause containing false statements, to allow plaintiff to be subject to an abuse of the criminal process under circumstances where both defendant MACINTOSH and defendant JOHN DOE knew or should have known that the plaintiff's civil rights were being violated.

289.    As a direct and proximate result of the conduct of the defendant MACINTOSH and the defendant JOHN DOE which amounts to an agreement or conspiracy to violate the plaintiff's civil rights as aforesaid, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

**WHEREFORE**, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the Eleventh Count against defendant TYQUAN D. MACINTOSH and JOHN DOE (1-10), individually and in their official capacities, for violations of her civil rights under the Constitution of the United States and pursuant to 42 USC §1983, §1985 and §1988, as follows:

a.      Compensatory damages;

b.      Economic and monetary damages for lost past and future salary and benefits;

c.      Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

d.      Consequential damages;

e.      Punitive damages;

f.      Award of attorney's fees, costs of suit and expert fees; and

g.      Any additional relief that the Court deems just and appropriate.

## TWELFTH COUNT

**(Sounding in Violations of Plaintiff's Civil Rights Secured Under the Constitution of the State of New Jersey and the NJ Civil Rights Act, N.J.S.A. 10:6-1, et seq., by Defendant Tyquan D. Macintosh, individually and in his official capacity, based on a Conspiracy)**

290.    Plaintiff repeats and incorporates herein each and every allegation set forth in paragraph 1 through 289 as if same were more fully set forth at length herein.

291.    At all times relevant hereto, defendant MACINTOSH and defendant JOHN DOE, acting individually and in his/her official capacity, and while acting under the color of state law, agreed and conspired to violate the civil rights, privileges and/or immunities afforded to the plaintiff and secured by the Constitution of the State of New Jersey and pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq., to unlawfully commit false arrest and false

imprisonment, to fail or refuse to provide plaintiff with necessary and adequate medical care in a timely fashion, to allow defendant MACINTOSH to submit and file a Complaint-Summons and Affidavits of Probable Cause containing false statements, to allow plaintiff to be subject to an abuse of the criminal process under circumstances where both defendant MACINTOSH and defendant JOHN DOE knew or should have known that the plaintiff's civil rights were being violated.

292.    As a direct and proximate result of the conduct of the defendant MACINTOSH and the defendant JOHN DOE which amounts to an agreement or conspiracy to violate the plaintiff's civil rights as aforesaid, the plaintiff suffered serious personal injuries to various parts of her body including but not limited to her back, shoulders, legs and torso, as well as emotional distress, anxiety and depression; and, economic losses for medical expenses to treat her injuries, as well as a loss of income, impairment of reputation, among other economic and non-economic damages to be proven at the time of trial.

**WHEREFORE**, Plaintiff JAYME L. JEFFERSON hereby demands judgment on the Twelfth Count against defendant TYQUAN D. MACINTOSH and JOHN DOES (1-10), individually and in their official capacities, for violations of her civil rights under the Constitution of the State of New Jersey and pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq., as follows:

a.      Compensatory damages;

b.      Economic and monetary damages for lost past and future salary and benefits;

c.      Non-economic losses and damages for pain and suffering, mental anguish, emotional distress, depression, anxiety, embarrassment, humiliation, inconvenience and loss of enjoyment of life;

d.      Consequential damages;

e.        Punitive damages;

f.        Award of attorney's fees, costs of suit and expert fees; and

g.        Any additional relief that the Court deems just and appropriate.

### JURY DEMAND

Plaintiff JAYME L. JEFFERSON hereby demands a trial by jury on all claims.

### DESIGNATION OF TRIAL COUNSEL

Scott K. Seelagy, Esq. is hereby designated as Trial Counsel for the plaintiff JAYME L.

JEFFERSON.

SCOTT K. SEELAGY, ESQ.

BY:        _____
Scott K. Seelagy, Esq.

Dated:  June 11, 2021

## <u>CERTIFICATIONS PURSUANT TO LOCAL CIVIL RULE 11.2</u>

I HEREBY CERTIFY that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceedings, and no other court proceedings or arbitration proceedings are contemplated at this time.

SCOTT K. SEELAGY, ESQ.

BY: _____
Scott K. Seelagy, Esq.

Dated: June 11, 2021